**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 8, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DG, by Next Friend G. Gail Stricklin;
CS, by Next Friend Barbara Sears; JB,
by Next Friend Buddy Faye Foster;
AP, by Next Friend Leslie A. Ellis
Kissinger; JA, by Next Friend Buddy
Faye Foster; JP, by Next Friend G.
Gail Stricklin; RJ, by Next Friend Paul
Naylor; GC, by Next Friend Anne
Sublett; KT, by Next Friend Barbara
Sears, for themselves and those
similarly situated,

     Plaintiffs-Appellees,

v.

RICHARD L. DEVAUGHN, in his
official capacity as Chairman of the
Oklahoma Commission for Human
Services; RONALD L. MERCER, in
his official capacity as Vice-Chairman
of the Oklahoma Commission for
Human Services; JAY DEE CHASE;
PATRICK DILLS DOUGLAS;
MICHAEL L. PECK; GEROLDINE
WEBB; ANETA F. WILKINSON;
GEORGE E. YOUNG, SR., in their
official capacities as members of the
Oklahoma Commission for Human
Services; HOWARD HENDRICK, in
his official capacity as Director of the
Department of Human Services,

     Defendants-Appellants.

No. 09-5093

----------------------------

WHITE FIELDS, INC.; OKLAHOMA
BAPTIST HOMES FOR CHILDREN;
OKLAHOMA UNITED METHODIST
CIRCLE OF CARE; SAND SPRINGS
CHILDREN'S HOME; AMERICAN
LEGION CHILDREN'S HOME;
PEPPERS RANCH, INC.;
OKLAHOMA LIONS BOYS RANCH;
GOODLAND ACADEMY,

     Movants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 08-CV-074-GKF-FHM)**

---

Marcia Robinson Lowry, Children's Rights, New York, New York (Frederic Dorwart and Paul DeMuro, Frederic Dorwart Lawyers, Tulsa, Oklahoma, and R. Thomas Seymour and Scott A. Graham, Seymour & Graham, LLP, Tulsa Oklahoma, and Bruce W. Day and Joe E. Edwards, Day, Edwards, Propester & Christensen, Oklahoma City, Oklahoma, with her on the briefs) for Plaintiffs-Appellants.

Donald M. Bingham, Riggs, Abney, Neal, Turpen, Orbison & Lewis, P.C., Tulsa, Oklahoma (Holly M. Hillerman, Riggs, Abney, Neal, Turpen, Orbison & Lewis, P.C., Tulsa Oklahoma, and Robert A. Nance and Melvin C. Hall, Riggs, Abney, Neal, Turpen, Orbison & Lewis, P.C., Oklahoma City, Oklahoma, with him on the briefs) for Defendants-Appellees.

---

Before **HOLMES**, **BALDOCK,** and **SILER**,[*] Circuit Judges.

---

     * Honorable Eugene E. Siler, United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

**BALDOCK**, Circuit Judge.

Nine Oklahoma foster children ("Named Plaintiffs"), acting through their next friends, filed suit under 42 U.S.C. § 1983 against members of the Oklahoma Commission for Human Services and the Director of the Oklahoma Department of Human Services ("OKDHS") in their official capacities, seeking declaratory and injunctive relief. The Oklahoma Commission for Human Services is the body responsible for formulating the policies and adopting the rules and regulations for the administration of the OKDHS. In their complaint, Named Plaintiffs sought certification of a class of all children who are or will be in the legal custody of OKDHS due to a report or suspicion of abuse or neglect or who are or will be adjudicated deprived due to abuse or neglect—approximately 10,000 children. Named Plaintiffs allege OKDHS's agency-wide foster care policies and practices expose all class members to an impermissible risk of harm, violating their Fourteenth Amendment right to substantive due process, their Fifth and Fourteenth Amendment rights to procedural due process, and their liberty and privacy interests guaranteed by the First, Ninth and Fourteenth Amendments. Specifically, Named Plaintiffs assert OKDHS's agency-wide deficiencies include: (1) failing to protect class members from abuse and neglect while in OKDHS custody; (2) failing to protect class members from abuse or neglect by their biological parents while in OKDHS custody; (3) assigning excessive caseloads to its child welfare caseworkers and

2

supervisors; (4) engaging in dangerous monitoring and oversight practices; (5) placing class members in unsafe and overcrowded emergency shelters; (6) placing class members in unsafe foster homes as a result of failing to develop sufficient numbers of safe placements; (7) maintaining policies and practices that deny class members opportunities to develop critical family relationships; and (8) maintaining policies and practices that subject class members to harmful moves among multiple inappropriate homes and facilities.

When Named Plaintiffs filed their complaint seeking class certification in February 2008, the parties did not have the benefit of our decisions in Shook v. Board of County Commissioners, 543 F.3d 597 (10th Cir. 2008) ("Shook II"), and Vallario v. Vandehey, 554 F.3d 1259 (10th Cir. 2009), which explain the proper standards for class certification when plaintiffs seek injunctive relief. In light of Shook II, the district court allowed Named Plaintiffs to supplement their motion for class certification by submitting a statement of relief sought and then ordered both parties to submit briefs addressing whether a class action seeking the relief requested by Named Plaintiffs would satisfy the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 65(d) as explained in Shook II.

After reviewing Named Plaintiffs' nine alleged common questions of fact, five alleged common questions of law, and seven requested remedies, as well as both parties' supplemental briefs, the district court certified the proposed class. The

3

district court found the proposed class met Rule 23(a)(1)'s numerosity requirement and Rule 23(a)(4)'s adequacy of class representation requirement. Neither party disputes the class meets those requirements. The district court also explained in a thorough and careful order that at least one question of fact and one question of law were common to the class, satisfying Rule 23(a)'s commonality requirement. Based on the evidence submitted by the parties, the district court concluded "[w]hether [OK]DHS has a policy or practice of failing to adequately monitor the safety of class members causing significant harm and risk of harm to their safety, health and well-being" presents an issue of fact common to the entire class. According to the court, this common question of fact raised one common issue of law: "[W]hether [OK]DHS's policies or practices violate class members' right to be reasonably free from harm and imminent risk of harm while in state custody." The court then concluded because Named Plaintiffs' claims are typical of the class's claims and Named Plaintiffs' claims are not significantly antagonistic to the class, the class satisfied Rule 23(a)'s typicality requirement. Finally, the court determined at least two of Named Plaintiffs' proposed remedies—(1) an injunction setting limits on the caseloads of caseworkers and their supervisors assigned to the class based on Council on Accreditation (COA) and Child Welfare League of America (CWLA) standards and (2) an injunction requiring caseworkers to visit all children in OKDHS custody as frequently as set forth under COA and CWLA standards—satisfy Rule

4

23(b)(2) and 65(d)'s requirements as explained in Shook II.

We granted Defendants' timely request for permission to file an interlocutory appeal of the district court's order granting class certification. Defendants argue the district court abused its discretion by erroneously finding the proposed class satisfied Rule 23(a)'s commonality and typicality requirements. They also assert the district court erred in concluding the proposed class satisfied Rule 23(b)(2)'s "generally applicable" and cohesiveness requirements. Exercising jurisdiction under 28 U.S.C. § 1292(e) and Fed. R. Civ. P. 23(f), we find no abuse of discretion and affirm the district court's order.

"We review the standard the district court used in making its Rule 23 determination de novo and the merits of that determination for an abuse of discretion." Vallario v. Vandehey, 554 F.3d 1259, 1264 (10th Cir. 2009); see also Shook v. El Paso County, 386 F.3d 963, 967 (10th Cir. 2004) ("Shook I"). Recognizing the considerable discretion the district court enjoys in this area, we defer to the district court's certification ruling if it applies the proper Rule 23 standard and its "decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand." Vallario, 554 F.3d at 1264. We reverse for an abuse of discretion when the district court bases its decision on either a clearly erroneous finding of fact or conclusion of law or by manifesting a clear error of judgment. Id.

5

I.

"'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" Shook I, 386 F.3d at 971 (quoting Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir.1982)). A district court may certify a class if the proposed class satisfies the requirements of Rule 23(a) and the requirements of one of the types of classes in Rule 23(b). The party seeking class certification bears the burden of proving Rule 23's requirements are satisfied. Shook I, 386 F.3d at 968. In deciding whether the proposed class meets these requirements, the district court "must accept the substantive allegations of the complaint as true," though it "'need not blindly rely on conclusory allegations of the complaint which parrot Rule 23' and 'may consider the legal and factual issues presented by plaintiff's complaints.'" Id. (quoting J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)); see also Vallario, 554 F.3d at 1265. While the court should not pass judgment on the merits of the case at the class certification stage, it must conduct its own "'rigorous analysis,'" to ensure Rule 23's requirements are met. Vallario, 554 F.3d at 1266–67 (quoting Shook I, 386 F.3d at 968); see also Shook II, 543 F.3d at 612.

A.

Rule 23(a) requires numerosity of class members, commonality of at least one

6

question of fact or law among the class, typicality of named plaintiffs' claims or defenses to the class's claims or defenses, and adequacy of the named plaintiffs and their attorneys as class representatives.[1]  Fed. R. Civ. P. 23(a)(1)–(4).  On appeal, Defendants only challenge the district court's Rule 23(a) findings as to commonality and typicality.  A finding of commonality requires only a single question of law or fact common to the entire class.  J.B., 186 F.3d at 1288.  Mere allegations of systemic violations of the law, however, will not automatically satisfy Rule 23(a)'s commonality requirement; a discrete legal or factual question common to the class must exist.  Id.  "[E]very member of the class need not be in a situation identical to that of the named plaintiff" to meet Rule 23(a)'s commonality or typicality requirements.  Milonas v. Williams, 691 F.2d 931, 938 (10th Cir. 1982) (citing Rich v. Martin Marietta Corp., 522 F.2d 333, 340 (10th Cir. 1975)).  Factual differences between class members' claims do not defeat certification where common questions of law exist.  Id. (citing Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1189 (10th

---

[1] Rule 23(a) states:
One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a)(1)–(4).

Cir. 1975)).

Defendants assert none of Named Plaintiffs' questions of law or fact are common to all class members by stressing that each of the approximately 10,000 children in OKDHS's custody receives an individualized and specific placement, treatment, and service plan that necessarily changes based on evolving circumstances and the unique characteristics of each child. Defendants, as a result, maintain that determining whether OKDHS has inadequate monitoring policies requires an individualized determination for each foster child. They also argue that Named Plaintiffs have not met their burden of proving that every class member is simultaneously subject to an imminent risk of serious harm as a result of OKDHS's controverted policies and practices. Defendants assert that the very statistics Named Plaintiffs cite—1.2% of Oklahoma foster children in 2006 reported abuse or neglect, for instance—reveal Named Plaintiffs have not met this burden. They reason "[b]ecause 98.8% [of foster children] did not suffer injury or neglect, and because not all putative class members are under an imminent threat of serious harm, the District Court's findings were clearly erroneous."

Defendants also argue for the first time that Named Plaintiffs' proposed class definition is "overly broad" because it includes children who are not under an actual or imminent threat of harm, thereby defeating commonality and typicality. We, of course, generally will not consider new arguments on appeal. See Robey-Harcourt

8

v. BenCorp Financial Co., Inc., 326 F.3d 1140, 1143 (10th Cir. 2003) (explaining that "we will not consider a new theory on appeal, even one 'that falls under the same general category as an argument presented at trial'"). But to the extent that Defendants' "overly broad" argument relies on their argument, which they did assert below, that Named Plaintiffs must prove every class member is under a threat of harm to satisfy Rule 23(a)'s requirements of commonality and typicality, we address it here.

Named Plaintiffs allege OKDHS caseworkers routinely fail to comply with its own policy of requiring caseworkers to visit children in the foster care program at least once per month to monitor children's safety and placement. They presented evidence to the district court that for the last five years Oklahoma has placed among the three worst states in the nation for the abuse or neglect of children in foster care. They also assert a report by the Oklahoma Commission on Children and Youth found that 25% of the foster homes it reviewed had serious safety issues and should never have been approved for placement by OKDHS in the first place. Named Plaintiffs maintain this and other similar evidence reveal OKDHS has a practice of failing to adequately monitor the safety of class members, exposing all of them to an unreasonable risk of harm.

In its ruling, the district court acknowledged the considerable diversity of the class Named Plaintiffs seek to represent—foster children range in age from infants

to teenagers, enter the system for many different reasons, may be placed in thirty-nine different kinds of placements, and have varying needs and goals. Nevertheless, the district court found at least one common issue of fact as to "[w]hether [OK]DHS has a policy or practice of failing to adequately monitor the safety of plaintiff children causing significant harm and risk of harm to [their] safety, health and well-being." The district court explained that, based on the evidence submitted, whether OKDHS's policies or practices inflict harm or a risk of harm presents a question of fact common to all children in the proposed class but expressly noted it was "not making any finding that these children are all subjected to harm as a result of [OK]DHS's monitoring practices." Similarly, the district court did not state it found OKDHS's policies or practices actually subjected all class members to a risk of harm. The court simply found that the issue of "whether [OKDHS's] monitoring practices compromise the safety of foster children is an issue common to the entire proposed class[,]" regardless of their unique factual circumstances. Based on the same rationale, the district court found at least one common issue of law regarding "whether the alleged policies or practices violate plaintiffs' [substantive due process] right to be reasonably free from harm and imminent risk of harm while in state custody." (citing Yvonne L. v. New Mexico Dep't of Human Serv., 959 F.2d 883, 892 (10th Cir. 1992) (explaining that children in state custody have a constitutional right to be reasonably safe from harm)).

10

Accepting Named Plaintiffs' allegations as true, as we must, we find the district court did not abuse its discretion in finding an issue of fact and law common to the class. Named Plaintiffs presented more than conclusory statements that OKDHS's agency-wide monitoring policies and practices, or lack thereof, create a risk of harm shared by the entire class.[2] All class members, by virtue of being in OKDHS's foster care, are subject to the purportedly faulty monitoring policies of OKDHS, regardless of their individual differences; therefore, all members of the class are allegedly exposed to the same unreasonable risk of harm as a result of Defendants' unlawful practices. Though each class member may not have actually suffered abuse, neglect, or the risk of such harm, Defendants' conduct allegedly poses a risk of impermissible harm to all children in OKDHS custody. Thus, we conclude the district court did not abuse its discretion in finding the requirement of commonality satisfied.

Defendants' discussion of Milonas v. Williams, 691 F.2d 931, 935 (10th Cir. 1982) is unavailing. In Milonas, we affirmed the certification of a class of all

---

[2] We do not suggest that Named Plaintiffs have at this stage proven OKDHS's monitoring polices or practices actually subject all class members to an impermissible risk of harm. For reasons we later explain, Named Plaintiffs need not prove class members have actually been subjected to an impermissible risk of harm at this stage. Rather, we mean Named Plaintiffs have provided, as Shook II and Vallario require, more than conclusory statements to demonstrate that whether OKDHS's monitoring policies and practices subject class members to an impermissible risk of harm constitutes a question of fact common to the entire class.

11

juveniles committed to a Utah correctional school in a lawsuit which alleged that regardless of their individual differences "all of the boys at the school were in danger of being subjected to" the institution's illegal practices. Id. at 938. We, therefore, concluded the typicality and commonality requirements of Rule 23(a) had been met. Id. The shared risk of being subjected to the purportedly unconstitutional practices justified certification. We did not require the named plaintiffs in Milonas to prove either every class member had actually been subjected to the controverted practices or every class member had actually suffered constitutionally-cognizable harm as a result of the practices. Similarly, in this case, every class member, by virtue of being in OKDHS's custody, is subject to OKDHS's monitoring practices or lack thereof and, therefore, "the issue of whether the monitoring practices compromise the safety of foster children is an issue common to the entire proposed class."

Defendants' reliance on J.B. ex rel. Hart v. Valdez, 186 F.3d 1280 (10th Cir. 1999), is also unpersuasive. In J.B., we held the district court had not abused its discretion in denying class certification. The named plaintiffs in J.B. alleged multiple state agencies violated their rights; whereas, here Named Plaintiffs only allege one state agency and its policies violated their rights. Second, the class of plaintiffs in J.B. was far broader. The proposed class consisted of all children, custodial and non-custodial (those at risk of being taken into state custody), who had any form of developmental or mental disability. We, therefore, concluded "[o]ther

12

than being disabled in some way and having some sort of contact with [the state]'s child welfare system, no common factual link joins" the suggested class. Id. at 1289. In contrast, Named Plaintiffs in this case propose a class of only those foster children in the custody of OKDHS by reason of abuse or neglect. Unlike the class members denied certification in J.B., all class members now before us are in the custody of one agency—OKDHS—for the same reason—abuse or neglect—and all are subject to OKDHS's monitoring policies, which allegedly subject them to a constitutionally unreasonable risk of harm.

Despite Defendants' repeated suggestions otherwise, at the class certification stage Named Plaintiffs do not bear the burden of proving the veracity of their complaint's allegations. Defendants' contention that Rule 23(a)'s commonality and typicality requirements demand that Named Plaintiffs prove all class members were inadequately monitored or are actually exposed to an imminent threat of harm as a result of deficient monitoring conflates the requirements for standing, prospective injunctive relief, and class certification. First, only named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future. See Warth v. Seldin, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport

13

to represent."); Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004) ("To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.").[3] Second, Rule 23's certification requirements neither require all class members to suffer harm or threat of immediate harm nor Named Plaintiffs to prove class members have suffered such harm. On the contrary, Named Plaintiffs only have a burden to prove that the allegations of their complaint, which at this stage we and the district court must accept as true, satisfy Rule 23(a)'s requirements. Shook I, 386 F.3d at 968. The Advisory Committee's Note to Rule 23 explains certification is appropriate even if the defendant's action or inaction "has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2), 1966 Amendment advisory committee note. "[A] class will often include persons who have not been injured by the defendant's conduct . . . . Such a possibility or indeed inevitability does not

[3] "Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." Tandy, 380 F.3d at 1283. To this end, the remaining six of the original nine Named Plaintiffs allege physical abuse, sexual abuse, and other injury due to unsafe conditions while in custody of OKDHS (three of the original nine Named Plaintiffs are no longer representatives or members of the class because they have been adopted or are no longer in OKDHS custody). The district court concluded the remaining Named Plaintiffs' allegations satisfied standing's injury in fact requirement and prospective relief's imminent risk of future injury requirement. Defendants do not challenge these findings on appeal and, consequently, we do not address them further.

14

preclude class certification." Kohen v. Pacific Inv. Mgmt. Co., 571 F.3d 672, 677 (7th Cir. 2009). Rule 23(a) only requires the district court to find a *question* of fact or law common to all class members. Fed. R. Civ. P. 23(a)(2). Requiring Named Plaintiffs to prove all class members were inadequately monitored or are actually exposed to a threat of harm due to OKDHS's monitoring practices at the certification stage would require them to *answer* the common question of fact or law, rather than just prove it exists. Rule 23(a) does not require the district court to have an answer before certifying a class; classwide discovery and further litigation answer the question after certification.

We also briefly address Defendants' argument that the district court made an erroneous finding of fact. Defendants maintain because the evidence presented demonstrated a class member has only a 1.2% chance of being injured, then 98.8% of the putative class is not under an imminent threat of serious harm and, therefore, no issue of fact or law common to its members exists. This argument entirely misses the mark. The "injury" the Named Plaintiffs allege which the district court found constituted a question of fact common to the class is not solely actual abuse or neglect. The injury, instead, includes exposure to an impermissible risk of harm due to OKDHS's alleged agency-wide failure to monitor class members adequately. That "only" 1.2% of OKDHS foster children actually suffered abuse reveals nothing about how many of those children were not properly monitored and yet survived an

15

unconstitutional risk of abuse or neglect unscathed. Logically, the fact that 1.2% of OKDHS foster children reported abuse or neglect does not mean the rest of the class was not exposed to an impermissible risk of serious harm. In theory, 100% of foster children could live under an imminent threat of serious harm, but only 1.2% ultimately suffer and report abuse or neglect.

B.

Having rejected Defendants' claims of error as to the district court's finding of commonality pursuant to Rule 23(a), we now address the district court's typicality finding. Rule 23(a)(3) requires the claims of Named Plaintiffs to be typical of the claims of the class they seek to represent. The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality. Anderson v. City of Albuquerque, 690 F.2d 796, 800 (10th Cir. 1982). Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988).

Defendants argue against typicality by emphasizing class members' individual circumstances and, therefore, the individualized defense to each class member's claim of a constitutional violation. They also contend that Named Plaintiffs' claims cannot be typical of the class because the Named Plaintiffs have alleged they suffered abuse while in OKDHS custody, while "only 1.2% of class members have

16

suffered abuse or neglect while in foster care."

After conducting its commonality analysis, the district court concluded that though each Named Plaintiff and each potential class member has his or her own unique background, the interests of the Named Plaintiffs and the class members are not significantly antagonistic to one another. And, like commonality, typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances. See Milonas, 691 F.2d at 938 (finding commonality and typicality where all members of class were in danger of being subjected to certain disciplinary practices regardless of their individual differences). The harm and threat of harm suffered by the Named Plaintiffs as a result of OKDHS's allegedly deficient monitoring practices is typical of the harm and threat of harm suffered by all children in the class because all foster children are subject to OKDHS's challenged, agency-wide monitoring policies. Additionally, Named Plaintiffs allege OKDHS's monitoring policies violate their substantive due process rights to be free from harm while in state custody, the same legal theory that underlies class members' corresponding claims. Due to the common risk of harm and the common underlying legal theory for asserting that risk, the district court acted within its discretion to find that typicality was satisfied.

II.

In addition to satisfying Rule 23(a)'s requirements, the class must also meet

17

the requirements of one of the types of classes described in subsection (b) of Rule 23. Named Plaintiffs in this case seek to certify a Rule 23(b)(2) type of class, *i.e.*, they assert Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole."[4]  Fed. R. Civ. P. 23(b)(2).  As we explained in Shook II, Rule 23(b)(2) "imposes two independent, but related requirements" upon those seeking class certification.  Shook II, 543 F.3d at 604.  First, plaintiffs must demonstrate defendants' actions or inactions are "based on grounds generally applicable to all class members."  Id.  Second, plaintiffs must also establish the injunctive relief they have requested is "appropriate for *the class as a whole*."  Id. (emphasis in original).  Together these requirements demand "cohesiveness among class members with respect to their injuries. . . ."  Id.

This cohesiveness, in turn, has two elements.  First, plaintiffs must illustrate the class is "sufficiently cohesive that any classwide injunctive relief" satisfies Rule 65(d)'s requirement that every injunction "'state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required.'"  Id. (quoting Fed. R.

---

[4] Rule 23(b) explains:
A class action may be maintained if Rule 23(a) is satisfied and if . . . .
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. . . .
Fed. R. Civ. P. 23(b)(2).

18

Civ. P. 65(d)). Second, cohesiveness also requires that class members' injuries are "sufficiently similar" that they can be remedied in a single injunction without differentiating between class members. Id. Rule 23(b)(2)'s bottom line, therefore, demands at the class certification stage plaintiffs describe in reasonably particular detail the injunctive relief they seek "such that the district court can at least 'conceive of an injunction that would satisfy [Rule 65(d)'s] requirements,' as well as the requirements of Rule 23(b)(2)." Id. at 605 (quoting Monreal v. Potter, 367 F.3d 1224, 1236 (10th Cir. 2004)).

Defendants challenge the district court's Rule 23(b)(2) determination by arguing that the district court did not make a specific finding that OKDHS's actions or inactions are based on grounds generally applicable to all class members as Rule 23(b)(2) requires. A review of the district court's ruling does not bear out this argument. The district court determined at least two remedies requested by Named Plaintiffs satisfied Rule 23(b)(2)'s requirements as explained in Shook II: (1) an injunction setting limits on the caseloads of caseworkers and their supervisors set by COA and CWLA and (2) an injunction mandating caseworkers monitor foster children by visiting them as frequently as set forth under COA and CWLA standards.[5] The district court explained that because Named Plaintiffs assert that

_____

[5] For example, according to Named Plaintiffs, CWLA standards suggest a caseload of twelve to fifteen children per caseworker and no more than five (continued...)

19

excessive caseloads are harming or putting at risk of harm *all* children in the class, the imposition of caseload limits would apply to the entire class. Similarly, the district court explained in its ruling the monitoring injunctive relief requested meets Rule 23(b)(2)'s cohesiveness requirement. Admittedly, the district court did not recite the exact language of Rule 23(b)(2)—"the party opposing the class has acted or refused to act on grounds that apply generally to the class"—when applying <u>Shook II</u> and its teachings to the facts of this case, but earlier in its ruling as part of its careful and detailed explanation of Rule 23(b)(2)'s requirements as set forth in <u>Shook II</u>, it did quote that precise language of Rule 23(b)(2). We refuse to find an abuse of discretion where the district court is accused of not talismanically reciting Rule 23(b)(2)'s exact language in applying the law to the facts when it clearly understood the law it was required to apply and accurately applied it. Implicit in the district court's conclusion that the imposition of caseload limits would apply to the entire class is the conclusion that all class members by virtue of living in OKDHS's

---

[5](...continued)
caseworkers per supervisor. And, according to Named Plaintiffs, COA standards require caseworkers to meet with foster children and parents at least once per month. The district court did not necessarily accept Named Plaintiffs' proposition that the caseload limits or monitoring requirements should be based on these standards. But because Named Plaintiffs had given specific content as what it would mean to provide adequate caseload staffing or adequate monitoring by relying on the COA and CWLA standards, the district court found "the injunctive relief is set forth in enough concrete manageable detail that the court could at least conceive of an injunction that would satisfy the requirements of both Rule 23(b)(2) and Rule 65(d)."

20

foster care are subject to OKDHS's alleged policy or practice of either assigning excessive caseloads or failing to ensure caseworkers are not carrying excessive caseloads. Thus, the district court found that at least one of Named Plaintiffs' requested injunctions remedies OKDHS's conduct based on grounds generally applicable to the class.

Defendants contend they presented evidence that the caseloads of caseworkers in rural areas were not excessive and that OKDHS caseworkers for the most part make their required visits. Defendants therefore maintain the district court "could not have found these issues to have been generally applied to the class as a whole." They also claim this same evidence demonstrates Plaintiffs failed to prove all class members suffered sufficiently similar injuries at the hands of OKDHS to satisfy Rule 23(b)(2)'s cohesiveness requirement. These arguments misunderstand what Rule 23(b)(2)'s "generally applicable" and cohesiveness requirements demand. First, Rule 23(b)(2) does not require Named Plaintiffs to prove OKDHS's controverted policies or practices actually harm or impose a risk of harm upon every class member at the class certification stage. As explained above, certification is appropriate even if the defendant's action or inaction "has taken effect or is threatened only as to one or a few members of the class, provided it is based on *grounds* which have general application to the class." Fed. R. Civ. P. 23(b)(2), 1966 Amendment advisory committee note (emphasis added). That a class possibly or even likely includes persons unharmed by a defendant's conduct should not preclude certification.

21

Kohen, 571 F.3d at 677. So long as OKDHS's challenged practices are based on grounds that apply generally to the class, class certification under Rule 23(b)(2) is proper even if at the class certification stage it is conceivable some class members have not been actually abused, neglected, or exposed to a risk of harm. Here the "grounds" that have general application to the class are that all class members have been placed in OKDHS's foster care program and, as such, caseworkers monitor all class members in a system that allegedly fails to ensure they do not carry caseloads so demanding that they cannot monitor class members adequately. Second, Rule 23(b)(2) demands class members' injuries alleged by Named Plaintiffs at the certification stage appear "sufficiently similar that they can be addressed in a single injunction that need not differentiate between class members." Shook II, 543 F.3d at 604. Named Plaintiffs allege the same injury on behalf of all class members as a result of excessive caseloads—exposure to an impermissible risk of harm. And, the district court expressly found exposure to an impermissible risk of harm a fact issue common to the entire class. To remedy this alleged harm, Named Plaintiffs propose an injunction requiring OKDHS assign no more than 15 foster children to each caseworker (based on CWLA standards). As the district court noted, such an injunction applies to the proposed class as a whole without requiring differentiation between class members. Because the district court properly applied the law to the alleged facts, we conclude Defendants' challenge of the district court's Rule 23(b)(2) findings is without merit.

22

III.

The district court's decision comports with Rule 23, our governing case law, and the alleged facts. Therefore, the district court did not abuse its discretion. We also note the district court's present certification decision is a preliminary one. After the parties conduct classwide discovery, the district court may find that the class, in fact, does not meet the requirements of Rule 23(a) or that more of Named Plaintiffs' requested remedies or none at all meet Rule 23(b)(2)'s requirements. If the court so finds, it possesses the discretion under Rule 23(c)(1)(C) to amend its certification order to reflect its findings or decertify the class altogether prior to final judgment. Fed. R. Civ. P. 23(c)(1)(C); see also In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261 (10th Cir. 2004).

AFFIRMED.