In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2497

MANUEL ANTONIO HERRERA HERNANDEZ,

*Plaintiff-Appellant,*

*v.*

THERESA LEE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for
the Eastern District of Wisconsin.
No. 2:22-cv-00508-SCD — **Stephen C. Dries**, *Magistrate Judge.*

ARGUED JANUARY 16, 2025 — DECIDED FEBRUARY 14, 2025

Before SCUDDER, KIRSCH, and LEE, *Circuit Judges.*

SCUDDER, *Circuit Judge*. Manuel Antonio Herrera Hernandez brought a constitutional claim arising from the alleged misplacement of his legal paperwork within the Waupun Correctional Institution. The district court entered summary judgment for the defendant correctional officials on the ground that Hernandez failed to exhaust administrative remedies within the prison. But Hernandez contends that the time he spent in restrictive housing complicated his ability to file a

grievance before bringing his claim to federal court. On the record before us, Hernandez's showing suffices to create a genuine dispute as to the exhaustion of available administrative remedies. So we reverse the district court's entry of summary judgment and remand for an evidentiary hearing on the exhaustion issue under our 2008 decision in *Pavey v. Conley*.

## I

## A

The facts giving rise to both Hernandez's claim and the exhaustion issue stem from the same event: Hernandez's temporary transfer from Waupun's general population to restrictive housing in October 2021. Before entering restrictive housing, Hernandez surrendered his personal property for storage. That property included his legal paperwork related to a pending case.

About a week after Hernandez's transfer, a prison official returned his property to him from storage. Hernandez signed a form indicating that he had received all his property, including his legal paperwork. Later that day, however, Hernandez realized that his paperwork was missing. By his account, he spoke to Sergeant Theresa Lee the same day, and she assured him he would receive his legal files along with the rest of his property once he returned to the general population. But when that day came a month or so later, Hernandez's paperwork remained missing.

After several unsuccessful attempts to locate his legal files, Hernandez submitted a grievance through Wisconsin's complaint review system for prisoners. See Wis. Admin. Code Dep't of Corrs. § 310.04. His grievance explained that his paperwork was still missing after he left restrictive housing,

even though Sergeant Lee had assured him he would receive it along with the rest of his property. Hernandez needed the paperwork for his pending case.

A complaint examiner rejected Hernandez's grievance as untimely under Wisconsin's fourteen-day deadline. See *id.* § 310.07(2). The examiner found that Hernandez's grievance accrued on November 2, 2021—the day he signed the form indicating that he had received all his property from storage. But Hernandez did not submit his grievance until December 23, well past the fourteen-day deadline. And, according to the complaint examiner, Hernandez had not demonstrated good cause for the late submission.

Hernandez then appealed to the warden, who affirmed the complaint examiner's decision. As best we can tell, Hernandez never recovered his legal files.

B

Following his unsuccessful attempt to pursue a grievance within the prison, Hernandez turned to federal court. Invoking 42 U.S.C. § 1983, he claimed that Sergeant Lee and three other Waupun prison officials deprived him of his right of access to the courts by misplacing his legal paperwork. See *Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). The district court entered summary judgment for the defendants on the ground that Hernandez failed to exhaust his administrative remedies.

Hernandez now appeals.

**II**

Hernandez presses two issues on appeal: first, whether Sergeant Lee's assurances that he would receive his paperwork excused his failure to exhaust; and second, whether the Waupun facility failed to provide him with a handbook explaining the prison's grievance process in Spanish.

**A**

We can quickly dispense with the second issue because Hernandez did not preserve it in the district court. Indeed, he failed to raise the issue in his brief opposing summary judgment. See, *e.g.*, *India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 659 n.2 (7th Cir. 2010)

In any event, the handbook has no bearing on the availability of the prison grievance process. After all, Hernandez alleges that he was unaware of the basis for his grievance (the missing paperwork) until the filing deadline had passed. We have a hard time seeing how access to a Spanish handbook would have alerted him to his claim for the missing paperwork any earlier. In no way do we excuse any failure to provide Hernandez with a Spanish handbook. Our point is only that, on this record, the handbook issue has no relation to the timing of Hernandez's grievance submission.

**B**

That leaves us with Sergeant Lee's alleged assurance that Hernandez would receive his legal paperwork after he returned to the general population. On that issue, we see disputed facts as to the exhaustion of available administrative remedies requiring an evidentiary hearing in the district court.

The Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies before challenging his conditions of confinement in federal court. See 42 U.S.C. § 1997e(a). A grievance "rejected solely on the basis of untimeliness" will not satisfy the statute's exhaustion requirement. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). But a prisoner need not exhaust remedies that are unavailable. See *Ross v. Blake*, 578 U.S. 632, 642 (2016). Administrative remedies are unavailable, the Supreme Court has explained, where the procedure for filing grievances "operates as a simple dead end" or is "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643.

Because exhaustion is an affirmative defense, the defendant shoulders the burden of establishing the availability of remedies. See *Jones v. Lamb*, 124 F.4th 463, 467 (7th Cir. 2024). If genuine factual disputes exist related to the availability of remedies, summary judgment is inappropriate. See *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023). Instead, the district court must hold an evidentiary hearing to resolve those disputes. See *Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008).

Against those principles, and under the unique circumstances of this case, we conclude that Hernandez's allegations raised a genuine dispute as to whether he had any reason to file a grievance until learning with more certainty that his legal papers were missing. If, as Hernandez contends, Sergeant Lee assured him that he would receive his legal paperwork after he left restricted housing, then he had no reason to file a grievance before he returned to the general population. Yet the complaint examiner and the warden took the position that Hernandez's grievance was late because he did not file it a

month earlier, when he first noticed his legal papers were missing.

Still, the defendants insist that the grievance process remained open to Hernandez. They stress that, under Wisconsin regulations, "a late complaint may be accepted for good cause, so long as an inmate includes a "request to file a late complaint" and "explicitly provide[s] the reason for the late filing." Wis. Admin. Code Dep't of Corrs. § 310.07(2). In their view, it was Hernandez's failure to properly invoke the good-cause exception, not Sergeant Lee's alleged statements, that prevented him from successfully filing a grievance. It is not clear, however, that his grievance failed to provide a good-cause basis for its lateness. The grievance explained that Hernandez did not know (and never thought) his paperwork was missing because Sergeant Lee told him it was "with the rest of [his] property." Regardless, if we take the facts as Hernandez alleges them, he would have had no reason to think his grievance was late. After all, he filed his grievance within 14 days of realizing that, despite Sergeant Lee's assurance, his legal paperwork was missing.

The defendants' position forces an inmate such as Hernandez to file a grievance when he lacked the requisite knowledge to have any reason to complain. Put differently, the defendants' interpretation of Wisconsin regulations rendered Waupun's grievance process a dead end, or at the very least, opaque at the time they say Hernandez had to file a grievance about his missing paperwork. See *Hurst v. Hantke*, 634 F.3d 409, 411–12 (7th Cir. 2011) ("[A]n administrative remedy that would be forfeited for failure to comply with a deadline that in the circumstances could not possibly be complied

with would not be 'available' within the meaning of 42 U.S. § 1997e(a).").

We acknowledge that Sergeant Lee disputes Hernandez's account of their interactions. But Hernandez's contention has enough support to survive summary judgment. For starters, he submitted a sworn declaration relaying his discussion with Sergeant Lee. That is sufficient to raise a genuine factual dispute at the summary judgment stage. See, *e.g.*, *Jones*, 124 F.4th at 468–69 (citing Fed. R. Civ. P. 56(c)). And even if it were not, Hernandez's position also finds support in his prison grievance record. His initial grievance asserted that his legal paperwork, which Sergeant Lee "told [him] she put with the rest of [his] property," was missing. And his appeal to the warden explained that he was unaware his paperwork was missing until he left restricted housing and realized that it was not with the rest of his property. In short, Hernandez's allegations have remained consistent throughout both the initial grievance process and this litigation.

In the end, it may be that Hernandez's contentions do not withstand scrutiny and that Sergeant Lee's account proves more credible and more compelling. But, as a court of review, we cannot make that call in the first instance. It is instead for the district court to make the required credibility determinations after holding an evidentiary hearing. See *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) ("[A]t a *Pavey* hearing, the court may take evidence and determine credibility before rendering the factual findings that settle the swearing contest.").

## III

One final issue warrants our attention. Hernandez brought this lawsuit against Sergeant Lee and three other

individuals: Officer Jacob Bohl, Captain Kyle Tritt, and Sergeant Charles York. Individual liability under § 1983 "requires personal involvement in the alleged constitutional deprivation." *Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) (quoting *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017)). Yet it is not clear to us—from either the summary judgment record or the operative complaint—whether Officer Bohl, Captain Tritt, and Sergeant York had any personal involvement in the alleged deprivation of Hernandez's right of access to the courts. We leave it to the district court to sort out this issue on remand.

Here, however, our focus is on the one issue before us: exhaustion. On that score, we conclude that Hernandez raised a genuine dispute as to the exhaustion of available administrative remedies. So the case must return to the district court for an evidentiary hearing under *Pavey*.

For these reasons, we REVERSE and REMAND.